The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Max A. MARTINEZ, Defendant–
Appellant.

No. 98CA2228.

Colorado Court of Appeals,
Div. V.

April 12, 2001.

Certiorari Denied Oct. 1, 2001. *

---

\* Justice COATS does not participate.

Justice BENDER would grant as to the following issues:

Whether the United States Supreme Court's decision in *Apprendi v. New Jersey* requires this court to overrule *People v. Henderson* and further rule that second-degree kidnapping, when it is enhanced by a factor of sexual assault, requires that a separate conviction for the sexual assault be merged into the kidnapping conviction.

Whether, under *Apprendi v. New Jersey*, a fact that requires the sentencing court to impose consecutive sentences must be specifically pleaded and proved beyond a reasonable doubt, thus requiring the court in this case to improve concurrent sentences with respect to all crimes involving the female victim.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Lauren Edelstein Park, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Law Offices of Peter R. Bornstein, Peter R. Bornstein, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Max A. Martinez, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree kidnapping, first degree assault, second degree assault, and first degree sexual assault. He also appeals the sentence imposed. We affirm, but remand for correction of the mittimus.

This case arises from the sexual assault of a fifteen-year old girl and the beating of her sixteen-year-old male cousin in a rural area of Adams County in August 1997. The victims were waiting for a bus in Denver when two men in a car drove up to them. A man later identified as defendant pointed a gun at the victims and ordered them into the back seat of the car.

A few minutes later, the driver (co-defendant) stopped the car at a gas station. While defendant got out to use the pay phone, the co-defendant got into an altercation with the station attendant, who later selected the co-defendant's picture from a police photo line-up. The attendant also identified the vehicle, but he could not see into the back of the car because it had tinted windows.

After the car left the gas station, it pulled into the parking lot of a convenience store. Defendant pointed a gun at the victims stating, "Don't get out of the car," and the co-defendant approached a female clerk in the store. According to her testimony, he asked for her pager number and she wrote it on a piece of paper and gave it to one of the men.

The men then drove with the victims to some trailer homes or duplexes. They ordered the male victim out of the car at gunpoint and told him to get into a blue and gray Chevy Blazer parked nearby that was later identified as belonging to defendant. Defendant and the co-defendant drove the

two vehicles in tandem to a remote field in Adams County where they ordered the male victim out of the Blazer. They kicked and beat him with a baseball bat, and left him unconscious on the ground. The two men then sexually assaulted the female victim and beat her until she was unconscious. When she regained consciousness, she summoned help.

Upon arrival at the scene, the police found the male victim unconscious in the field. The prosecution presented evidence at trial that he was so badly beaten he was unable to remember the events and did not testify at trial. The female victim suffered a skull fracture, abrasions to the head and back, and other injuries.

After defendant was selected from a photo lineup by the convenience store clerk and the female victim, police obtained an arrest warrant for him and arrested him at his home. A blue and gray Chevrolet Blazer was parked nearby. The police seized it without a warrant and impounded it. Later, they prepared an affidavit and obtained a search warrant for the vehicle. In the glove compartment, police found a slip of paper later identified by the clerk as the pager number she had given to the men.

Defendant was tried separately from the co-defendant and convicted of first degree assault on the male victim. Defendant was also convicted of three offenses against the female victim: second degree kidnapping, first degree sexual assault, and second degree assault.

The following issues are presented on appeal: (1) whether the trial court erred in denying defendant's motion to suppress evidence seized from his vehicle; (2) whether he should have been granted a mistrial because the co-defendant was brought into the courtroom in jail clothes and shackles; (3) whether the admission of testimony by a victim and a detective in another case as similar act evidence unfairly prejudiced defendant; (4) whether the photographic lineup used to identify him was unfairly suggestive; (5) whether he was entitled to concurrent rather than consecutive sentences; and (6) whether the mittimus reflects the proper sentence.

We agree with defendant that the mittimus must be corrected to reflect a total sentence of 91.5 years in the Department of Corrections, rather than 93.5 years as was stated by the trial court. However, we reject all of his other arguments.

## I.

Defendant first contends the trial court erred in denying his motion to suppress as evidence the slip of paper recovered from the glove box of his vehicle, a key piece of evidence linking him to the crime because it contained the convenience store clerk's pager number. Defendant claims that the vehicle was illegally seized without a warrant and that, even though a search warrant later was obtained, the police conduct violated his constitutional right to be free from unreasonable searches and seizures under U.S. Const. amend. IV and Colo. Const. art. II, § 7. We disagree.

As a general rule, the Fourth Amendment requires police to secure a warrant before conducting a search. However, there is an exception for vehicles. *Maryland v. Dyson*, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); *People v. Reyes*, 956 P.2d 1254 (Colo. 1998). The vehicle exception "is predicated on the inherent mobility of motor vehicles and the diminished expectation of privacy in an object designed exclusively as a means of transportation." *People v. Thiret*, 685 P.2d 193, 202 (Colo.1984).

Although earlier decisions have reasoned that an automobile's mobility created exigent circumstances that often make it impractical for police officers to obtain a search warrant, *see People v. Naranjo*, 686 P.2d 1343 (Colo.1984), it is now clear that exigent circumstances are not required under the automobile exception. *Maryland v. Dyson, supra.* If there is probable cause, the vehicle may be searched immediately without a warrant or seized for a later search after a warrant is obtained. *People v. Romero*, 767 P.2d 1225 (Colo.1989); *People v. Thiret, supra.*

## A.

■ As a threshold matter, we reject defendant's contention that the People may not raise the automobile exception on appeal because they failed to do so during the suppression hearing in the trial court. A party may defend the judgment on any ground supported by record, whether or not the trial court relied on or considered the argument. *See People v. Quintana,* 882 P.2d 1366 (Colo. 1994).

## B.

We are satisfied that the seizure and subsequent search of defendant's vehicle met the requirements of the automobile exception.

■ At the time defendant's vehicle was seized, the female victim had already informed police that one of the vehicles used in the crimes was a "Blazer of some type," and she had identified defendant in a photo lineup as one of the assailants. Defendant was arrested at his home pursuant to a warrant, and a Blazer was parked on the street outside of his residence and was the same color described by the victim. The police checked the license plate and discovered that the vehicle was registered to defendant.

Although the affidavit supporting defendant's arrest warrant identified a much earlier model Blazer, defendant was identified as a suspect and his vehicle was alleged to have been used during the crimes. *See People v. Edwards,* 836 P.2d 468 (Colo.1992)(probable cause means reasonable grounds to believe that contraband or evidence of criminal activity is located in area to be searched). Another important factor was the mobility of the vehicle and the potential that it could easily have been removed and evidence could have been destroyed or lost.

Accordingly, we conclude there was probable cause for the warrantless seizure of defendant's vehicle.

We also agree with the trial court that the affidavit in support of the search warrant for the vehicle established probable cause for the later search at the police impound lot.

■ Probable cause is established when an affidavit submitted in support of a search warrant alleges facts sufficient to cause a person of reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched. The standard for evaluating whether a search warrant complies with constitutional requirements is one of practical accuracy rather than technical nicety, and a description is adequate if the officer executing the warrant can with reasonable effort ascertain and identify the place intended to be searched. *People v. Meraz,* 961 P.2d 481 (Colo.1998); *People v. Ragulsky,* 184 Colo. 86, 518 P.2d 286 (1974).

■ A trial court's finding that there was probable cause to support the issuance of a search warrant is entitled to great deference, and a reviewing court need only determine that a substantial basis existed for the finding. *See People v. Leftwich,* 869 P.2d 1260 (Colo.1994).

■ Contrary to defendant's contention, the affidavit in support of the search warrant for the vehicle was not fatally defective because it failed to state specifically that the sexual assault had taken place inside the car. That affidavit specified that the police intended to search for:

Material evidence developed by a thorough sex assault crime scene investigation, including but not limited to: Still and Video photographing and measuring: the body and all personal property of the victim(s): weapons and ammunition of every kind that could cause or contribute to the injuries of the victim(s): trace material of every kind such as clothing, fiber, hair, body fluids, and latent prints and objects on which they are found; *documentary evidence tending to establish the motive or identity of any suspect or witness:*

Any guns

Any bats or clubs

Any clothing of the victim .... (emphasis added)

The affidavit also set forth the circumstances surrounding the alleged crimes and directed the officers conducting the search to look for any evidence pertaining to the sexual assault. It is immaterial whether the assault

took place in the vehicle because it had been established that the vehicle was present at the location of the alleged crimes, and it was reasonable to believe evidence of the assault might be inside the vehicle.

■ Inasmuch as the affidavit included a request for documentary evidence related to the determination of motive or identity of the perpetrators, its scope was adequate to include the slip of paper recovered inside the vehicle. Accordingly, we conclude the trial court did not err in denying defendant's motion to suppress evidence.

## II.

■ Defendant next contends the trial court abused its discretion in denying his motion for mistrial when the co-defendant, who had been tried separately, was brought into the courtroom in jail clothing, shackles, and under guard by sheriff's deputies. This incident occurred during the testimony of a witness who identified the co-defendant as one of the men the witness had seen the night the crimes occurred. We perceive no abuse of discretion by the court.

■ A mistrial is a drastic remedy and is only warranted where the prejudice to the defendant is too substantial to be remedied by other means. *People v. Collins*, 730 P.2d 293 (Colo.1986). The trial court has broad discretion to grant or deny a mistrial and its decision will not be disturbed on appeal absent a gross abuse of discretion and prejudice to the defendant. *People v. Abbott*, 690 P.2d 1263 (Colo.1984)

■ Reasonable efforts should be made to prevent prisoners under restraints from being seen by jurors. *See Hamrick v. People*, 624 P.2d 1320 (Colo.1981). Nevertheless, to merit reversal in a case involving a witness or co-defendant appearing in jail clothing, a defendant must demonstrate that the appearance of the witness or co-defendant was so prejudicial that defendant was deprived of a fair trial. *People v. Walters*, 796 P.2d 13 (Colo.App.1990).

At the time of this incident, defense counsel objected and moved for a mistrial. The trial court heard argument, took the matter under consideration, and denied the motion on the following day. However, the court did give the jury the following admonition:

Members of the Jury: I'm sure you all noticed during the testimony of [the witness] an individual was brought into the courtroom [that the witness] identified here in open court, and that individual was in the custody of the sheriff's officers.

I need to give you a couple of admonitions regarding that. First of all, do not speculate in any way, shape or form as to why that individual may have been in the custody of the sheriff, and secondly, do not under any circumstances draw any adverse inferences of any kind against [defendant] because this other gentleman was brought in here in restraints.

I'm sure you all understand [defendant] is the man who is on trial, and no one else. Your duty here is to determine whether the district attorney can meet [his] burden of proof and prove the case against this defendant beyond a reasonable doubt, and you should not, as I say, draw any adverse inferences against [defendant] because, obviously the question whether this other person is or is not in custody has nothing to do with the guilt or innocence of [defendant].

The court concluded that this admonition was sufficient "in light of all the other evidence in the case," but left open the possibility of sanctions if it were established that the co-defendant's appearance in shackles had been "orchestrated" by the district attorney. No such showing was made.

■ We conclude the trial court did not abuse its discretion in denying the mistrial. The court informed the jurors that no improper inferences were to be drawn from the co-defendant's appearance, and there is a presumption that the jury understood and followed the court's instruction. *See People v. Geisendorfer*, 991 P.2d 308 (Colo.App. 1999). In view of that instruction, we are not persuaded that the co-defendant's appearance was unfairly prejudicial to defendant.

## III.

Defendant next contends the trial court erred in admitting testimony by a victim and a detective in another case as similar act evidence under § 16–10–301(1), C.R.S. 2000, and CRE 404(b). We disagree.

Evidence of similar transactions may be admitted in a sexual assault prosecution under § 16–10–301(1) and CRE 404(b) where it is offered for the limited purpose of establishing a common plan or scheme, design, identity, modus operandi, motive, guilty knowledge, or intent. *People v. Bolton*, 859 P.2d 311 (Colo.App.1993).

In ruling on a motion to admit such evidence, the trial court must consider the remoteness of the prior acts, the strength of the evidence of those acts, the similarities between those acts and the charged offense, the need for the evidence and efficacy of alternative proof, and the degree to which the evidence will inflame the jury to hostility against the defendant. *Adrian v. People*, 770 P.2d 1243 (Colo.1989). It is not essential that each of the prior acts replicate the charged offense. *See People v. Garner*, 806 P.2d 366 (Colo.1991); *People v. Bolton, supra*.

The trial court has substantial discretion in determining the admissibility of similar transactions evidence, and its ruling will not be disturbed absent a clear abuse of that discretion. *People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

Here, the prosecution introduced evidence of sexual assaults committed against two young girls approximately two weeks before the charged offenses in this case. The two girls had been offered a ride by two men in a car matching the description of the car driven by the co-defendant in the charged offenses.

In the earlier case, the girls were not permitted to get out of the car, and the two perpetrators drove them to an apartment complex where one perpetrator got into a blue Blazer matching the description of the second vehicle used in the charged offenses. The girls in the earlier case were taken to a remote area of northern Adams County near cornfields. They were then separated, sexually assaulted, forced to perform oral sex on the perpetrators, and left in a remote area. One perpetrator was described as white or light-complected and the other as black or dark-complected.

In this case, the two victims were abducted from a bus stop by two men, and the car used in that abduction matched the description of the co-defendant's vehicle. One of the perpetrators was described as "black/Hispanic," and the other as white. The assailants stopped to retrieve a blue Blazer and drove it to a remote area of Adams County near cornfields. The male victim was severely beaten. Both of the perpetrators sexually assaulted the female victim, and she was also forced to perform oral sex on them. The victims were then left in the remote area.

After applying the four-part test for CRE 404(b) evidence set forth in *People v. Spoto*, 795 P.2d 1314 (Colo.1990), the trial court found that the evidence was admissible, but it gave the jury a limiting instruction explaining that the evidence was to be considered only "for the purpose of demonstrating the defendant's common plan and identity."

There is record support for the trial court's finding that the evidence was relevant to the identification of the perpetrators, a material fact at issue. The evidence also was logically relevant because it tended to make the existence of identity more probable than it would have been without it, and the logical relevance of the evidence was independent of an inference of bad character.

While the facts of the two incidents were not identical, they were strikingly similar, almost signature crimes. In both incidents, two vehicles were used and their descriptions were similar. In both, the perpetrators started one of the vehicles with a screwdriver. Also, in both incidents, the assaults were committed by each perpetrator in his own vehicle, and the location in which the assaults were committed was distinctive. *See People v. Garner, supra* (logical nexus between other-crime evidence and material issue of identification was clearly manifested by distinctive manner in which crimes were committed).

The probative value of the evidence was not outweighed by unfair prejudice. *See People v. Garner, supra; People v. Spoto, supra.* Nor does the record support defendant's contention that the testimony at trial materially differed from that offered at the hearing on the prosecution's pretrial motion to admit the evidence.

We therefore conclude the trial court did not abuse its discretion in admitting this evidence.

## IV.

■ Defendant next contends the photo lineup used to identify him was unduly suggestive because the female victim originally had described one of the assailants as white, but the lineup consisted of photographs of Hispanic males with light complexions. We disagree with defendant that, given the victim's original description, the lineup had to consist only of photographs of white males.

■ A pretrial identification procedure is unduly suggestive if, based upon the totality of the circumstances, there is a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Borrego*, 668 P.2d 21 (Colo.App.1983).

■ A lineup is proper if the photographs used are matched by race, approximate age, hair type, and a number of other characteristics. *See People v. Kemp*, 885 P.2d 260 (Colo.App.1994). If the trial court determines that the procedures were not unduly suggestive, the identification is admissible without further inquiry. *People v. Martinez*, 734 P.2d 126 (Colo.App.1986).

Here, the array of photographs was composed of individuals of the same race, approximate age, hair, and facial type, and the trial court found that the photo lineup was "totally fair and non-suggestive in nature." We therefore reject defendant's contention that this identification procedure was improper.

## V.

Defendant next contends the trial court erred in imposing consecutive sentences for the three convictions arising from the crimes committed against the female victim. He asserts that: (1) the second degree kidnapping and first degree sexual assault counts merged into one another because, in order to prove the kidnapping, it was necessary to prove the predicate crime of sexual assault; (2) the first degree sexual assault and second degree assault counts also merged because both offenses required proof of serious bodily injury and were supported by identical evidence; and (3) concurrent sentences were required because all three offenses were intertwined, because they only involved one victim, and because identical evidence was presented at trial to prove them. We disagree with each argument.

### A.

■ A court is prohibited from imposing multiple punishments for a greater and lesser included offense by the Double Jeopardy Clauses of the federal and state constitutions, by statute, and by the judicially-created rule of merger. *People v. Leske*, 957 P.2d 1030 (Colo.1998); *People v. Henderson*, 810 P.2d 1058 (Colo.1991); *see* § 18–1–408(1)(a), C.R.S.2000 (defendant "may not be convicted of more than one offense if . . . [o]ne offense is included in the other. . . .")

In Colorado, judicial merger has been analyzed under double jeopardy principles, but regardless of whether double jeopardy or merger principles are invoked, an identical analysis has been employed to determine whether a lesser offense is included within a greater offense.

An offense is treated as lesser included when proof of the essential elements of the greater offense necessarily establishes the elements required to prove the lesser offense. Thus, to determine whether an offense is included in another, the elements of the applicable statutes are compared. *People v. Leske, supra; People v. Gholston*, 26 P.3d 1 (Colo.App.2000). *See* § 18–1–408(5)(a)("An offense is [lesser] included when . . . [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged.").

■ A sentence or penalty enhancer is similar to an essential element of an offense in that a defendant may not be sentenced at the higher felony level unless the factor enhancing the sentence is proved beyond a reasonable doubt. However, for purposes of double jeopardy, sentence or penalty enhancers have been held *not* to be substantive elements of the charged offense and, therefore, have not been considered in determining whether one offense is the lesser included of another. *Armintrout v. People*, 864 P.2d 576 (Colo.1993); *People v. Henderson, supra.*

■ A statutory provision is a penalty or sentence enhancer if its proof, while raising the felony level of the offense, is not required to secure a conviction of the charged offense. *People v. Gholston, supra.*

At the time of this offense, sexual assault in the first degree constituted a class two felony, rather than a class three felony if—among other things—the victim suffered serious bodily injury. Colo. Sess. Laws 1985, ch. 151, § 18–3–402(3) at 666. Hence, the infliction of serious bodily injury for purposes of the sexual assault statute raised the class of felony for which defendant could be convicted, *Armintrout v. People, supra; People v. Henderson, supra,* but it was not an element of the offense itself. *See People v. Vigil,* 718 P.2d 496 (Colo.1986)(holding that the provision raising first degree sexual assault from class three to class two felony, if the victim suffered serious bodily injury, was an enhancement factor).

■ Similarly, second degree kidnapping under § 18–3–302, C.R.S.2000, is a class three felony but, as relevant here, it became a class two felony because the jury found that the enhancement factor of sexual assault was proven beyond a reasonable doubt. *See People v. Henderson, supra* (sexual assault is a sentence enhancer, not a lesser included offense of, and therefore not merged into, second degree kidnapping involving sexual assault).

Defendant acknowledges that *People v. Henderson, supra,* is dispositive of his contention, but he maintains that it should be reexamined in light of the United States Supreme Court's decision in *Apprendi v.*

*New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which was announced after defendant's conviction. More specifically, defendant asserts that:

> Under *Apprendi,* any enhancing fact that increases the maximum must be proved beyond a reasonable doubt and subjected to a decision by a jury. This was not done in this case. Additionally, the holding in *Henderson* ... which distinguishes enhancement allegations from elements of the crime is a distinction that requires reexamination....

According to defendant, the trial court's imposition of the three consecutive sentences relating to the female victim was an impermissible "enhancing fact" that increased the maximum in violation of *Apprendi.* While we acknowledge that *Apprendi* has blurred the distinction between elements of a crime and penalty enhancers, we are not persuaded that it requires a different result in this case.

The defendant in *Apprendi* shot a rifle into the home of an African–American family and was charged in an indictment that made no reference to New Jersey's hate crimes statute. He pled guilty, among other charges, to second degree possession of a firearm for an unlawful purpose.

After the court accepted the plea, the prosecutor filed a motion to enhance the sentence pursuant to the hate crimes statute, which permitted the court to increase the sentence if it found by a preponderance of the evidence that the crime was racially motivated. Following a hearing, the trial court increased the sentence pursuant to that statute.

On appeal, the defendant challenged the constitutionality of the statute, and the Supreme Court framed the issue as:

> [W]hether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt.

*Apprendi v. New Jersey, supra,* 530 U.S. at 466, 120 S.Ct. at 2351, 147 L.Ed.2d at 442.

The Court reviewed the historical importance of trial by jury and the requirement of

proof beyond a reasonable doubt. It concluded that the procedure used by the New Jersey courts violated the Due Process Clause and stated that:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum [for the particular crime] must be submitted to the jury, and proved beyond a reasonable doubt.

*Apprendi v. New Jersey, supra,* 530 U.S. at 490, 120 S.Ct. at 2363–64, 147 L.Ed.2d at 455.

■ *Apprendi* thus requires that defendants be given notice of any fact—other than the fact of a prior conviction—that may increase the maximum penalty, and further requires that the jury determine whether such facts were proven beyond a reasonable doubt.

There has been considerable discussion regarding the scope of *Apprendi* since it was announced in June 2000, it has already been cited in over 730 published decisions with varying results. *See United States v. Jones,* 235 F.3d 1231 (10th Cir.2000)(applying *Apprendi,* the panel vacated defendant's sentence and concluded that because drug quantity resulted in an enhanced penalty under the federal sentencing guidelines, quantity was an "essential element" of the offense that must be alleged in the indictment); *State v. Price,* 61 Conn.App. 417, 767 A.2d 107 (2000)(concluding that trial court should have instructed jury regarding enhanced punishment provision in accordance with *Apprendi,* but that error was harmless; enhanced sentence upheld); *State v. Grossman,* 622 N.W.2d 394 (Minn.App.2001)(concluding that because determinations whether a defendant is a "patterned sex offender" as well as a "danger to public safety" increases maximum sentence, they must be made by a jury in accordance with *Apprendi*); *State v. Muhammad,* 166 N.J. 523, 766 A.2d 1126 (2001)(although court held that imposition of enhanced punishment under New Jersey statute required jury determination under *Apprendi,* it upheld sentence, concluding jury necessarily found violent crime predicate in reaching its verdict). *See also* Ellis, et al., *Apprehending and Appreciating Apprendi,* 15 Criminal Justice 17 (Winter 2000).

*Apprendi* has also been applied to consecutive sentences. *See People v. Harden,* 318 Ill.App.3d 425, 251 Ill.Dec. 885, 741 N.E.2d 1063 (2000)(section of Illinois statute that allows trial court to impose consecutive sentences upon making one or more factual findings held unconstitutional under *Apprendi*); *but see People v. Lucas,* 321 Ill.App.3d 49, 254 Ill.Dec. 163, 746 N.E.2d 1211 (2001)(concluding *Apprendi* does not apply to consecutive sentences and upholding same section of statute).

Thus, while *Apprendi* requires that the jury determine any fact—other than the fact of a prior conviction—that may increase the maximum penalty using the proof beyond a reasonable doubt standard, it is uncertain whether *Apprendi* compels the conclusion that any such fact that may increase the maximum penalty *ipso facto* becomes an essential element of that offense. Given this uncertainty, we conclude that *People v. Henderson, supra,* remains dispositive of the merger issue before us.

■ We further conclude the Colorado sentencing scheme did not violate defendant's right to due process. In contrast to the facts in *Apprendi,* defendant here was fully apprised of the charges against him including the enhanced provisions. In addition, the facts supporting enhancement were resolved by the jury and the trial court specifically instructed the jury it was to reach its verdict *only if the prosecution proved enhancement beyond a reasonable doubt.*

Because the determination whether there was enhancement was resolved by the jury under the appropriate legal standard and after proper notice to defendant, we conclude there was no due process violation in this case. *See People v. Whitaker,* 32 P.3d 511 (Colo.App.2000)(concluding *Apprendi* was inapplicable where jury made finding of sentence-enhancing conduct beyond a reasonable doubt).

Further, the conduct enhancing the felony class of defendant's convictions—serious bodily injury and sexual assault—was necessarily proven beyond a reasonable doubt because the jury was given instructions on each of the

crimes that included the sentence enhancing conduct. The jury verdicts on the assault and sexual assault charges demonstrate that a finding of guilt beyond a reasonable doubt was made. *See People v. Powell,* 716 P.2d 1096 (Colo.1986)(conviction for second degree kidnapping involving sexual assault requires proof of sexual assault beyond a reasonable doubt); *People v. Vigil, supra* (no instructional error where there was no reasonable possibility that jury considered enhancement factors in light of any standard of proof other than beyond a reasonable doubt); *State v. Muhammad, supra.*

We therefore reject defendant's contention that *Apprendi* affects the convictions relating to the female victim or requires that he receive concurrent sentences for those convictions. Given our conclusion, we need not determine whether *Apprendi* is to be given retroactive effect. *See United States v. Jones, supra* (although *Apprendi* was announced after defendant's conviction, court concluded that it applied retroactively because defendant's case was pending on direct review).

### B.

■ We also reject defendant's contention that the first degree sexual assault and second degree assault counts were supported by identical evidence because they both required proof of serious bodily injury, therefore requiring that defendant be sentenced concurrently for these offenses under § 18–1–408(3), C.R.S.2000.

As relevant here, 18–1–408(3), provides that:

> When two or more offenses are charged ... and they are supported by identical evidence ... the sentences imposed shall run concurrently; except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences.

*See People v. Leske, supra* (if each offense necessarily requires proof of at least one additional fact that the other does not, strict elements test is not satisfied and presumption arises that defendant may be convicted of both offenses).

In *Qureshi v. District Court,* 727 P.2d 45, 47 (Colo.1986), the supreme court stated that when a defendant is convicted of multiple offenses, the sentencing court's "traditional discretion to impose either consecutive or concurrent sentences, depending upon the gravity of the accused's criminal conduct, remains intact [under § 18–1–408], if the trial court finds that the multiple counts are not supported by identical evidence."

Here, we perceive no error by the trial court in determining these counts were not supported by identical evidence. The jury was properly instructed regarding the elements of each crime committed against the female victim. *See* §§ 18–3–302(1), (second degree kidnapping); § 18–3–203(1)(g)(second degree assault), C.R.S.2000; Colo. Sess. Laws 1975, ch. 171, § 18–3–402 at 628 (first degree sexual assault).

Section 18–3–203(1)(g), C.R.S.2000, provides that a person commits assault in the second degree if, "[w]ith intent to cause bodily injury to another person, he causes serious bodily injury to that person or another."

Because proof of the elements of sexual assault necessarily required proof of facts not required to prove the assault charge or the kidnapping charge, those two offenses were not supported by identical evidence. In addition, the facts establishing the second degree assault were relevant only to the sentence enhancement aspect of first degree sexual assault, and the facts establishing the sexual assault were relevant only to the sentence enhancement aspect of second degree kidnapping.

### C.

We also reject defendant's related contention that all three offenses were supported by identical evidence and therefore required that he be sentenced concurrently for these offenses under § 18–1–408(3).

As noted, the facts establishing second degree assault were relevant only to the sentence enhancement aspect of first degree sexual assault, not to the elements of that offense. Likewise, the facts establishing the sexual assault were relevant only to the sentence enhancement aspect of second degree

kidnapping, not to the elements of that offense. In addition, proof of the elements of sexual assault necessarily required proof of facts not required to prove the assault charge or the kidnapping charge.

■ Because the evidence establishing each of the three charges was not identical for the purposes of § 18–1–408(3), and because of the gravity of defendant's criminal conduct toward both victims, we conclude the trial court did not abuse its discretion in imposing consecutive sentences. *Qureshi v. District Court, supra.*

## VI.

Defendant next contends his sentence must be vacated and the cause remanded for resentencing because the trial court did not have a pre-sentence investigation report at the time of sentencing. We conclude any error was harmless.

Section 16–11–102(1)(a), C.R.S.2000, requires probation officers to prepare a pre-sentence report for the court prior to the imposition of a sentence. However, § 16–11–102(4), C.R.S.2000, allows the court to dispense with the report "with the concurrence of the defendant and the prosecuting attorney." *See People v. Gretz,* 973 P.2d 110 (Colo.App.1998)(disapproving sentencing without pre-sentence report where prosecution specifically objected to procedure).

At the beginning of defendant's sentencing hearing in this case, the trial court informed counsel that a pre-sentence report had not been prepared, apparently because defendant· had refused to be interviewed by the probation department without his attorney present. Defense counsel informed the court that defendant's refusal to be interviewed was at counsel's direction because defendant had other criminal charges pending against him. Following this representation, the trial court stated that it would proceed to sentencing without a pre-sentence report. Neither the prosecutor nor defense counsel objected.

■ We agree with defendant that a pre-sentence report should have been prepared by the probation department for use by the court. Even if defendant had not been interviewed, the report still would have contained valuable information that the General Assembly has determined to be important at sentencing. This information includes:

information as to the defendant's family background, educational history, employment record, and past criminal record [and] an evaluation of the alternative dispositions available for the defendant.

Section 16–11–102(1)(a).

■ Despite this error, however, the record reflects that defendant's counsel submitted a sentencing memorandum containing much of the information that would have been contained in the pre-sentence report, and was its functional equivalent. Given this submission by the defense, and given defendant's failure to object to the court's procedure and his failure to allege on appeal how he was prejudiced by the absence of the pre-sentence report, we conclude the error by the court in sentencing defendant without the report was harmless. *See* C.A.R. 35(e)(appellate court shall disregard any error or defect not affecting substantial rights of the parties). Defendant also may file a motion for reconsideration of the sentence under Crim. P. 35(b).

## VII.

■ Defendant's final contention is that he was actually sentenced to a total of 91.5 years in the Department of Corrections, rather than 94.4 years, as stated by the trial court at the sentencing hearing. We agree.

The record does not contain the mittimus, but the minutes of the register of actions reflects that the defendant's sentences total 91.5 years. Similarly, the transcript of the sentencing hearing reflects that the trial court sentenced defendant to 28 years in prison for second degree kidnapping, 21 years for first degree assault, 32 years for first degree sexual assault, and 10.5 years for second degree assault to be served consecutively. The total sentence is 91.5 years and, on remand, the mittimus should be corrected to so reflect.

The judgment and sentence are affirmed, and the cause is remanded to the trial court with directions to correct the mittimus to

reflect that defendant was sentenced to 91.5 years in prison plus the applicable period of mandatory parole.

Judge TAUBMAN and Judge ROY concur.