The PEOPLE OF the State of Colorado, Plaintiff–Appellee,

v.

Samuel J. SILVA, Defendant–Appellant.

No. 86CA1579.

Colorado Court of Appeals, Div. V.

July 13, 1989.

Rehearing Denied Aug. 10, 1989.

Certiorari Denied Nov. 27, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and John Milton Hutchins, First Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, and Rachel A. Bellis, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Samuel J. Silva, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree sexual assault and the sentence imposed upon that conviction. He claims that the judgment must be reversed because the trial court erred by denying his motion for dismissal as a sanction for the prosecution's failure to preserve material evidence, by limiting his right to confront and cross-examine the victim with the use of her treatment records, and by allowing the prosecution to impeach his credibility with

evidence of a prior felony conviction. As to the sentence imposed, defendant contends the court erred in relying upon constituent elements of the offense as aggravating factors justifying a sentence outside the presumptive range. We affirm.

The primary issue at trial was whether the victim consented to certain sex acts. Defendant contended that the victim had consented to the acts in exchange for money, and that any assault had occurred after the completion of those acts. The victim testified that she had engaged in the acts as a result of having been beaten and strangled.

## I.

Defendant's challenge concerning the failure to preserve material evidence hinges on a statement by the victim that defendant had opened the trunk of his car immediately before the sexual assault. Defendant asserted that the car's trunk was inoperable and that, if the car had been available, he could have demonstrated its condition to impeach the victim's testimony.

The car had been impounded at the time of defendant's arrest in 1985, but it was unavailable at the time of trial, some 14 months later. Despite his awareness of the victim's statement shortly after his arrest, defendant did not request that the car be tested or preserved, nor did he otherwise assert its usefulness to him prior to the trial when he moved to dismiss the charges.

In denying defendant's motion to dismiss, the court advised the jury the parties had stipulated that:

"The car involved in this case was in custody at Denver Police Department after the defendant's arrest. It was in the police custody pound over thirty days after which time it became unavailable to the District Attorney and to the defense. Because of the action of the police the car is not available so it cannot be positively determined that the trunk of the car is capable of being opened."

Defendant did not specifically object to the court's instruction but now contends that the remedy afforded was inadequate, and that the court erred in refusing to dismiss the charge because of an alleged violation of his due process rights. We disagree.

■ In order to establish a due process violation for failure to preserve potentially exculpatory evidence, a defendant must show that the lost evidence was material. *People v. Greathouse*, 742 P.2d 334 (Colo. 1987). More particularly, a defendant must establish that: (1) the evidence was suppressed, released, or destroyed by the prosecution; (2) that it had an exculpatory value that was apparent before it was released or destroyed; and (3) that defendant was unable to obtain comparable evidence by other reasonably available means. *People v. Enriquez*, 763 P.2d 1033 (Colo.1988).

■ Although this case was tried prior to our supreme court's decision in *People v. Greathouse, supra,* so that the trial court did not make specific findings required by that decision, it did find that the release of the car was effectuated in accord with standard police departmental policy, and not in bad faith. It also found that the evidence "could be exculpatory" because it might be favorable to the accused if, indeed, the trunk would not open. However, because it found that the exculpatory value of the lost evidence was not conclusively demonstrated, the court declined to dismiss the case and afforded the less drastic remedy of unequivocally informing the jury that the loss of the evidence was attributable to police conduct.

In view of the long delay before defendant asserted any significance in the car's condition and of the speculative nature of the impact that the alleged discrepancy might have had upon the victim's credibility, we conclude that defendant failed to demonstrate the car's apparent exculpatory value at a time prior to its release. Thus, we conclude that defendant has failed to establish a due process violation resulting from the prosecution's failure to preserve the car.

In light of this conclusion, we need not reach the question whether the court abused its discretion in fashioning an appropriate remedy for the prosecution's fail-

ure to preserve the car. *See People v. Enriquez, supra; People v. Holloway,* 649 P.2d 318 (Colo.1982).

## II.

The trial court's treatment of the victim's privilege in this case was previously reviewed by our supreme court in *People v. District Court,* 719 P.2d 722 (Colo.1986). There, in vacating a pretrial order that allowed defendant the right to examine the victim's treatment records, the court held that the records were within the purview of the statutory psychologist-patient privilege and that, absent a waiver of that privilege, defendant was neither entitled to inspect the records nor to require that the trial court examine them and apply a balancing test in formulating an appropriate protective order. However, the supreme court left open the possibility that the victim's privilege might be waived by proceedings subsequent to remand.

Upon direct examination at trial, the victim was asked whether she suffered emotional effects resulting from the alleged assault. She testified that she had experienced bad dreams, discomfort when people walked behind her, and a fear of riding in cars with strangers. She was also asked if she had sought counseling as a result of the assault, and, after she responded affirmatively, the inquiry was terminated.

Defendant maintains that, by so testifying, the victim injected her mental condition and resulting treatment into the proceedings, and thereby impliedly waived her psychologist-patient privilege conferred by § 13–90–107(1)(g), C.R.S. (1987 Repl.Vol. 6A). We are not persuaded.

The privilege conferred under the statute is based upon a legislative policy to enhance the effective diagnosis and treatment of illness by protecting patients from any embarrassment and humiliation that might be caused by disclosing information imparted to the therapist for such treatment. *Bond v. District Court,* 682 P.2d 33 (Colo.1984). The patient's privilege extends to notes and records made and to advice rendered by a therapist during the course of the treatment relationship.

*Clark v. District Court,* 668 P.2d 3 (Colo. 1983).

Waiver of a privilege is a form of consent which may be established by showing that its holder has expressly or impliedly forsaken his or her claim to confidentiality with respect to information protected by the privilege. *Bond v. District Court, supra.* The burden of establishing waiver is on the party who seeks to overcome the privilege. *Miller v. District Court,* 737 P.2d 834 (Colo.1987). A waiver may be implied, however, if the privilege holder injects his or her mental condition into a case as the basis of a claim or an affirmative defense. *Clark v. District Court, supra.*

Initially, we note that this is not a case in which the victim is asserting a personal claim based upon her physical or mental condition. The victim's role was that of a witness, rather than that of a party-in-interest who sought personal relief or asserted an affirmative defense based upon a claimed condition. Indeed, the victim's mental condition had dubious relevance to any issue presented in the case. We also note that defendant did not seek to exclude the victim's testimony about her symptoms as irrelevant. Rather than objecting to the admission of the proffered testimony, the defendant only sought to use that evidence as a springboard to invade the area of confidentiality afforded by the statutory privilege.

Secondly, we note that the record is devoid of any indication that the victim was ever apprised of the existence or nature of her rights as the holder of the privilege in question, or that the privilege might be waived by her responses to the prosecution's questions. The privilege of confidentiality is personal and belongs to its holder. It should not lightly be deemed waived by the holder's unwitting responses to questions posed by persons who have no personal or fiduciary interest in its preservation.

A district attorney, in carrying out the duties of his office, appears as the representative of the people of the state rather

than as an attorney for the victim or any witness involved in the action. *See* Colo. Const. art. VI, §§ 13 and 22; § 20–1–102(1)(a) and (3), C.R.S. (1986 Repl. Vol. 8B). Consequently, the prosecutor's interests and motives in posing questions to witnesses are not necessarily congruent with the privacy interests of the witness. Hence, a witness may not understand that his or her answers to a prosecutor's seemingly innocuous questions might be interpreted as a waiver of the statutory privilege of confidentiality. Under such circumstances, no intent to forsake the privilege should be inferred from the witness' responses.

Here, the victim did not testify concerning the substance of any communication she had with the therapist. Nor did she testify about any diagnosis or treatment advice rendered by the therapist. Rather, her testimony indicated only that she had consulted a therapist about problems she had experienced.

Thus, under the totality of the circumstances presented here, we conclude that testimony did not reveal any intent by the witness to forsake her right to confidentiality concerning the privileged communications with the therapist. *See* § 13–90–107(1)(g), C.R.S. (1987 Repl.Vol. 6A). *See also People v. Perry*, 7 Cal.3d 756, 103 Cal.Rptr. 161, 499 P.2d 129 (1972); C. McCormick, *Evidence* § 103 (West 3d ed. 1984).

Hence, we conclude that no waiver of the psychologist-patient privilege has been shown here, and that the court did not err or abuse its discretion in refusing to engage in an *in camera* inspection or in limiting defendant's right of cross-examination concerning the privileged material. *See People v. District Court, supra.*

## III.

Defendant next contends that the trial court erred in refusing to suppress evidence of his 1983 conviction for felony theft. He argues that his guilty plea in that case was constitutionally infirm, and that evidence of the resulting conviction should not have been admitted to impeach his credibility. We disagree.

In the 1983 providency hearing, defendant was advised that the possible penalty for the offense there at issue was eight years but was not advised that the presumptive range was two to four years and could be less if mitigating circumstances were found. This purported defect in the advisement is asserted by defendant to render the conviction unconstitutional. However, under similar circumstances, the supreme court in *People v. Lacey*, 723 P.2d 111 (Colo.1986) concluded that the error in the advisement could not have induced the defendant to plead guilty and refused to set aside the conviction. We find that ruling dispositive here and, likewise, find no constitutional defect.

Defendant's reliance on *People v. Chippewa*, 751 P.2d 607 (Colo 1988) is misplaced. In that case the defendant was not advised on the effect of his parole status in triggering a mandated aggravated range penalty. The defendant entered a guilty plea after having been informed that the penalty might be as little as four years or as much as 24 years, and that he could presume his sentence would fall into the presumptive eight-to-twelve-year range in the absence of aggravating circumstances. In fact, the defendant's status as a parolee mandated the imposition of sentence in the aggravated 12 to 24–year range. Immediately upon his receipt of a presentence report indicating the legal effect of his parole status, Chippewa unsuccessfully moved to withdraw his guilty plea.

On appeal, our supreme court expressly declined to reach Chippewa's due process claim and held only that he had shown "fair and just cause" to withdraw his plea. Noting that Chippewa's decision to offer the plea might reasonably have been prompted by the trial court's erroneous understatement of the possible minimum penalty, the court held that the trial court had abused its discretion in denying Chippewa's motion to withdraw his plea. *See People v. Chippewa, supra.*

Here, unlike the circumstances in *Chippewa*, no statutorily mandated sentencing enhancers were involved, and the court did not misinform the defendant by understating the possible penalty. Moreover, defendant did not seek to withdraw his plea

when he learned, via the probation report, the applicable range of penalties, or when the two-year sentence was imposed, or at any time during the period of his incarceration.

Under the totality of circumstances presented here, we conclude that the trial court correctly determined that defendant's 1983 plea was knowing and voluntary and that his prior conviction did not violate due process of law.

## IV.

Defendant finally contends that the court abused its discretion in considering evidence of the manner and degree of defendant's use of force in committing the sexual assault as an extraordinary aggravating factor, and imposing a sentence in the aggravated range. He argues that since the use of physical force or violence was an essential element of the crime for which he was convicted, it cannot also be considered an aggravating factor. That argument is without merit. *See People v. Sanchez*, 769 P.2d 1064 (Colo.1989).

A trial court is not required to discuss each factor enumerated in the sentencing statute in imposing its sentence. *People v. Walker*, 724 P.2d 666 (Colo.1986). Here, while the court focused its remarks upon the nature and degree of force applied, the record reflects that it also considered the material in the probation report including defendant's prior criminal and social history.

Absent a showing of a clear abuse of discretion, a trial court's sentencing decision will not be overturned on appeal. *People v. Hotopp*, 632 P.2d 600 (Colo.1981). No such showing has been made here, and we conclude that the record and the court's findings are sufficient to support the sentence imposed.

The judgment and sentence are affirmed.

METZGER and CRISWELL, JJ., concur.