Sammuel C. DONELSON,
Plaintiff–Appellant,

v.

Brad C. FRITZ, Defendant–Appellee.

No. 01CA0777.

Colorado Court of Appeals,
Div. IV.

Nov. 21, 2002.

Leventhal, Brown & Puga, P.C., James E. Puga, Anthony Viorst, Denver, CO, for Plaintiff–Appellant.

Pryor, Johnson, Montoya, Carney & Karr, P.C., Robert W. Carney, Elizabeth C. Moran, Englewood, CO, for Defendant–Appellee.

Opinion by Judge VOGT.

In this action for damages arising out of an automobile accident, plaintiff, Sammuel C. Donelson, appeals the judgment entered on a jury verdict in favor of defendant, Brad C. Fritz. We affirm.

Defendant ran a red light and struck a car. That car, in turn, hit plaintiff's car. Plaintiff sued to recover damages for his injuries. The jury found that plaintiff had not incurred medical expenses in excess of the $2,500 statutory threshold and accordingly returned a verdict for defendant.

## I. *Batson Issues*

Plaintiff first contends that the trial court erred in failing to sustain his challenges to defendant's exclusion of jurors on account of race, gender, and disability. We disagree.

### A. *Race*

The Equal Protection Clause of the Fourteenth Amendment prohibits the use of peremptory challenges to discriminate against potential jurors based on race. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Valdez v. People,* 966 P.2d 587 (Colo.1998). This prohibition is applicable in civil as well as criminal cases. *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); *Middleton v. Beckett,* 960 P.2d 1213 (Colo. App.1998).

[3] *Batson* outlines a three-step process for evaluating claims of racial discrimination in jury selection. The first step requires that the challenging party make a prima facie showing that the other party excluded a potential juror because of race. The prima facie standard is not high and requires only evidence sufficient to raise an inference that discrimination occurred. Further, this issue generally becomes moot once the court has gone through the second and third steps in the *Batson* analysis. *Valdez v. People, supra.*

If the challenging party establishes a prima facie case, the burden shifts to the proponent of the challenged strike to come forward with a race-neutral explanation for it. Although that burden cannot be satisfied merely by denying a racially discriminatory motive, the explanation need not be persuasive or even plausible as long as it is facially race-neutral. *Valdez v. People, supra.*

If a race-neutral reason is tendered, then the trial court advances to the third and final step, in which it must determine whether the opponent of the strike has proven purposeful racial discrimination. The opponent must have the opportunity to rebut the proponent's race-neutral explanation by showing, for example, that it is pretext. The court must then determine, on the basis of all the evidence before it, whether it can find by a preponderance of the evidence that one or more potential jurors were excluded because of race. *Valdez v. People, supra.*

On appeal, we review de novo the trial court's ruling on steps one and two of the *Batson* analysis. However, we afford deference to its ultimate resolution of a *Batson* challenge in step three, reversing only for clear error. *Valdez v. People, supra.*

When plaintiff, who is African–American, objected to defendant's peremptory challenge to a Spanish-surnamed juror, the trial court found that a prima facie *Batson* showing had been established and invited defendant to state a race-neutral basis for the exercise of his peremptory challenge. In response, defendant stated that the challenged juror worked with a small company and had expressed concern about having to be at the trial. Further, the juror had only a high school education, was single, and had characterized himself as a buyer.

Arguing that defendant's reasons were pretextual, plaintiff pointed out that defendant had challenged other minorities as well, that defendant had spent no time on voir dire to explore the juror's biases, and that nothing in the challenged juror's responses suggested that he favored one party or the other. The trial court denied plaintiff's challenge.

We agree with the trial court that defendant's explanation for the strike was facially race-neutral. Further, the trial court's ultimate resolution of the *Batson* challenge was not clearly erroneous. The juror had expressed concern about whether his employer could afford to pay him for work while he was not there. When he was reminded that the employer was obligated to do so, he had responded that his own work was going to sit there until I get back. The reference to the juror as a buyer related to questioning of the venire by counsel to determine whether they would characterize themselves as spenders or savers, a characterization which was apparently perceived as indicative of their willingness to award significant damages. Moreover, the record does not indicate that defendant's questioning of this juror was perfunctory in comparison to his questioning of other members of the venire.

Plaintiff argues on appeal that defendant's reasons were pretextual because other jurors who were not challenged also had scheduling conflicts, had only a high school education, and were single. However, plaintiff did not make this argument to the trial court and thus has not preserved it for appeal. *See Valdez v. People, supra* (a claim that an excused juror was similarly situated to other jurors must be raised in argument to trial court so that it can be tested and determined as a factual matter by that court).

In sum, we conclude that the trial court did not err in denying plaintiff's *Batson* challenge based on race.

## B. *Gender*

We further conclude that plaintiff is not entitled to relief based on defendant's asserted exclusion of a juror on the basis of gender.

■ The principles announced in *Batson* also apply to gender-based discrimination in jury selection. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Valdez v. People, supra,* 966 P.2d at 589 n. 7.

■ At trial, plaintiff objected to defendant's peremptory challenge to a Spanish-surnamed woman, arguing, as he had argued in regard to the juror discussed above, that the challenge evidenced racial discrimination. Defense counsel responded that he had her down as a spender and that, like plaintiff, she was a public school district employee. Plaintiff countered that the juror had expressed the same views regarding damages as other members of the panel and that defendant had not taken time to explore her biases. The trial court found no discrimination based on race and denied the challenge.

In his posttrial motion for judgment notwithstanding the verdict or for a new trial, plaintiff argued for the first time that the removal of this juror was impermissible gender discrimination. He based his contention on a statement made off the record by defense counsel, before the parties made their record on the *Batson* issues, that he was merely trying to remove women from the jury.

In his written response to the posttrial motion, defendant's counsel conceded that he did state that he would prefer male jurors, which has been disapproved under *J.E.B. v. Alabama,* but then stated that the juror had other characteristics and experiences that led him to dismiss her regardless of gender. The trial court denied the posttrial motion without comment.

While a concession by counsel that he removed a juror based on gender could establish a *Batson* violation in other circumstances, we decline to conclude, on this record, that plaintiff is entitled to a new trial on this basis.

When the exclusion of this juror was initially challenged as impermissible racial discrimination, defendant gave a facially race-neutral explanation for excluding her, and the trial court found that her exclusion was not based on racial discrimination. That finding is not clearly erroneous. Although plaintiff's posttrial motion indicates that he was aware, at the time of the on-the-record colloquy regarding this juror, that defense counsel had stated a preference for male jurors, plaintiff did not at that time cite defense counsel's statement as evidence of gender discrimination. Thus, he did not give the trial court a timely opportunity to determine, as a factual matter and on the basis of the entire record, whether defendant's exclusion of the juror was based on gender discrimination. *See Valdez v. People, supra.*

■ Although plaintiff argues on appeal that we should adopt a rule that a single discriminatory explanation taints the entire jury selection process regardless of the genuineness of other explanations for the strike, he did not raise that argument in the trial court, either at trial or in his posttrial motion. Therefore, the issue is not preserved for appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo. 1992). Moreover, even if we were to view a nonpreserved *Batson* issue as cognizable under a plain error standard of review in a civil case, we would find no plain error on this record. *See Hidalgo v. Fagen, Inc.,* 206 F.3d 1013 (10th Cir.2000)(trial court's failure sua sponte to find gender discrimination where defendant's counsel stated that he preferred male jurors to female ones did not rise to level of plain error in civil case).

## C. *Disability*

We also do not agree that the trial court erred in rejecting plaintiff's *Batson* challenge to defendant's exclusion of two jurors based on their disabilities.

Plaintiff alleged that the accident left him with pain and permanent injuries, required him to cut back on his previous work-related and personal activities, and exacerbated his pre-existing medical problems. During voir dire, defendant used peremptory challenges to remove from the jury a white female nurse

with disabling rheumatoid arthritis and a black man who was disabled on account of a hip condition.

When plaintiff challenged the exclusion of these jurors, defendant gave several reasons for striking them. In each instance, the juror's physical condition was a factor. Defendant expressed concern that the woman's experiences with chronic pain and musculoskeletal problems could cause her difficulty in sitting through long trial days and posed a risk that she would identify with and be sympathetic to plaintiff's claims of back pain and impairment. Defendant also stated that the man's hip condition could make it difficult for him to concentrate at trial.

After expressing some uncertainty whether *Batson* had been extended to persons with disabilities, the trial court concluded that it was not improper, in a case dealing with a person with disability and chronic pain, to exclude people with similar conditions. Thus, it denied plaintiff's challenge to the exclusion of these jurors.

Relying on a law review article, David G. Hart and Russell D. Cawyer, *Batson and Its Progeny Prohibit the Use of Peremptory Challenges Based upon Disability and Religion: A Practitioner's Guide for Requesting a Civil Batson Hearing*, 26 Tex. Tech L.Rev. 109 (1995), plaintiff argues that the trial court should have ruled that *Batson* prohibited defendant's peremptory challenges based on disability. Plaintiff cites no cases that have so held, and our research has located none. Rather, courts that have decided the question appear to have uniformly rejected the argument plaintiff makes here.

In *J.E.B. v. Alabama ex rel. T.B., supra,* the Supreme Court observed that peremptory challenges made on the basis of group characteristics other than race or gender do not implicate the concerns raised by the exclusion of jurors based on stereotypes about the competence or predispositions of a particular race or gender.

The Seventh Circuit cited that observation when it held, in *United States v. Harris,* 197 F.3d 870 (7th Cir.1999), that the use of peremptory challenges to exclude disabled jurors did not violate the constitutional rights of the defendant or the jurors. In so holding, the court rejected the argument—similar to that made by plaintiff here—that the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., established the disabled as a suspect class whose exclusion from juries must be reviewed with heightened scrutiny under a traditional equal protection analysis. The court concluded that disabled persons are not a suspect or quasi-suspect class and that the government could therefore excuse them for any reason rationally related to the selection of an impartial jury. *United States v. Harris, supra; see also J.E.B. v. Alabama ex rel. T.B., supra,* 511 U.S. at 143, 114 S.Ct. at 1429, 128 L.Ed.2d at 106 (Parties may . . . exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to 'rational basis' review.).

Like the *Harris* court, other courts have rejected claims that *Batson* precludes exclusion of jurors with disabilities. *See United States v. Santiago–Martinez,* 58 F.3d 422 (9th Cir.1995)(recognition of obese persons as disabled for purposes of ADA does not subject them to heightened scrutiny under Equal Protection Clause and thus does not prohibit peremptory strikes on the basis of obesity); *Williams v. State,* 634 So.2d 1034 (Ala.Crim.App.1993)(fact that venire member's physical disability or discomfort might hinder her ability to serve on jury was legitimate race-neutral reason for peremptory challenge); *State v. Kleypas,* 40 P.3d 139 (Kan.2001)(*Batson* does not prohibit strikes based on alcoholism even though alcoholism meets definition of disability for ADA purposes); *People v. Falkenstein,* 288 A.D.2d 922, 732 N.Y.S.2d 817 (2001)(no *Batson* violation to strike disabled juror where prosecutor was concerned that her hearing impairment would affect her ability to assess audiotape evidence).

■ We agree with the rationale of these decisions and conclude that *Batson* does not apply to peremptory challenges to persons with disabilities. Therefore, even if we assume that the physical conditions from which these jurors suffered constituted disabilities within the meaning of the ADA, the trial

court did not err in denying plaintiff's *Batson* challenge to their exclusion from the jury.

Finally, we note that the statutory provision addressing the right of persons with disabilities to serve on juries, § 13–71–104(3)(b), C.R.S.2002, was not raised by the parties in the trial court or on appeal.

## II. *Statutory Threshold*

■ Plaintiff next argues that the trial court erred in allowing the jury to decide whether he met the statutory threshold for recovery of damages. We disagree.

■ Under the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S. 2002 (No–Fault Act), a plaintiff cannot recover damages in a tort action arising out of an automobile accident unless he or she proves that the accident caused at least one of the losses listed in § 10–4–714(1), C.R.S.2002. These include, as pertinent here, a [r]easonable need for [medical] services ... having a reasonable value in excess of $2,500. Section 10–4–714(1)(e), C.R.S.2002.

■ To show that this threshold requirement has been met, the plaintiff has the burden of establishing not only that he or she actually incurred medical expenses in excess of $2,500, but also that the expenses were for services to treat injuries caused by the accident and that a reasonable necessity for such services existed. *See Pinell v. McCrary,* 849 P.2d 848 (Colo.App.1992); *Jorgensen v. Heinz,* 847 P.2d 181 (Colo.App.1992).

■ Whether a plaintiff has met the statutory threshold is normally a question of fact. The issue may be taken from the jury only if the evidence regarding the extent and cause of the alleged injury is so clear that reasonable persons could not arrive at a contrary verdict. *Pinell v. McCrary, supra.*

Here, although plaintiff did not move for a directed verdict on the threshold issue, he objected to the verdict form and the threshold instruction that allowed the jury to decide the issue, arguing that there was no specific evidence that he did not have less than $2500 [sic] in medical expenses. The trial court found that there was a factual issue as to whether or not the treatment that was received was connected to the automobile accident and accordingly overruled the objection.

The trial court did not err in allowing the jury to decide the issue. Contrary to plaintiff's contention, defendant's expert did not admit that some $2,700 in medical expenses incurred between March 19, 1999, when the accident occurred, and June 12, 1999, when plaintiff had back surgery, were for the treatment of injuries sustained in the automobile accident. Plaintiff had suffered from back pain for several years before the accident, and there was conflicting testimony regarding the cause of his back pain. Although plaintiff's chiropractor and physical therapist testified that their treatment was reasonable, necessary, and causally related to the accident, defendant's expert opined that the automobile accident did not cause the symptoms that led plaintiff to have surgery in June 1999.

Based on the evidence presented, reasonable minds could have differed on whether the expenses plaintiff incurred for treatment of his back were for injuries caused by the accident. Therefore, the issue was properly submitted to the jury.

## III. *Subpoena Duces Tecum*

■ We also disagree with plaintiff's contention that the trial court abused its discretion in quashing portions of his subpoena duces tecum that directed defendant's expert to provide copies of information identifying the percentage of his income derived from various enumerated sources other than his medical practice.

■ Litigants are entitled to bring out evidence on cross-examination that tends to show bias or prejudice on the part of a witness, including a witness who is testifying as an expert for the opposing party. *See Bonser v. Shainholtz,* 3 P.3d 422 (Colo.2000); *Evans v. Colorado Permanente Medical Group, P.C.,* 902 P.2d 867 (Colo.App.1995), *aff'd in part and rev'd in part,* 926 P.2d 1218 (Colo.1996).

■ The right of parties to discover such evidence, while broad, is not unlimited. The need for discovery must be balanced against the right of the party from whom discovery

is sought to privacy and protection from harassment. *Silva v. Basin Western, Inc.,* 47 P.3d 1184 (Colo.2002); *see also* C.R.C.P. 45(b) (upon timely motion, court may quash or modify subpoena for production of documentary evidence if it is unreasonable and oppressive); *Leidholt v. District Court,* 619 P.2d 768 (Colo.1980).

C.R.C.P. 26(a)(2)(B)(I) requires that parties disclose certain information about their expert witnesses, including the compensation the witness is receiving and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. While the rule does not preclude a party from requesting additional information about the opposing party's expert witnesses, it reflects a balancing of the need for discovery and the need for protection from unduly burdensome discovery requests.

■ Rulings on discovery issues, including requests for protective orders and the like, are committed to the discretion of the trial court. *Bond v. District Court,* 682 P.2d 33 (Colo.1984).

Plaintiff served the subpoena duces tecum on defense counsel on the Wednesday before trial. Defendant filed an objection, noting that much of the requested information had already been provided. He also moved to quash the two requests for copies of information identifying the portion of the witness's total income derived from various enumerated nonmedical sources. According to defendant, the witness did not maintain his files in a manner that would enable him readily to identify the percentage of his income derived from these sources. Defendant argued that it would be extremely burdensome for the witness to review all his files in the few remaining days before trial to obtain the requested information and further argued that the subpoena sought unnecessary disclosure of the witness's personal and confidential financial information.

The trial court agreed that the requested information would be relevant to the issue of the witness's credibility, but concluded that the rules of civil procedure limiting the amount of information required to be disclosed by a party on behalf of its testifying

expert reflected an appropriate balance in this case between the need for discovery and the need for protection from unduly burdensome discovery requests. Accordingly, the court granted the motion to quash.

The trial court did not abuse its discretion. Plaintiff had deposed defendant's expert and had received information through discovery that enabled him to conduct a lengthy cross-examination in which he brought out facts that could suggest a bias in favor of the defense. Further, because of the difficulty in accessing the requested information in the few days remaining before trial, it was within the discretion of the court to conclude that the burdensomeness of the request outweighed the relevance of the information sought. We do not agree with plaintiff that the trial court read C.R.C.P. 26(a)(2)(B)(I) as necessarily imposing a ceiling on expert discovery. Rather, the court simply found the balance reflected in that rule to be an appropriate resolution of the issue in this case.

■ We also reject plaintiff's contention that defendant did not have standing to object to the subpoena. It was defendant's obligation to make the required C.R.C.P. 26 disclosures on behalf of his retained expert, and defendant would necessarily have to compensate the expert for time or expense he incurred in locating the additional information requested in the subpoena. Defendant thus had an interest in ensuring that he not be required to produce information beyond the scope of permissible discovery. *See Falzon v. Home Insurance Co.,* 661 P.2d 696 (Colo.App.1982)(plaintiffs had standing even though subpoenas were not directed to them and they did not possess or control the subpoenaed documents).

### IV. *Costs*

■ Finally, plaintiff argues that the trial court erred in including in its cost award some $100 for defense counsel's mileage and parking expenses. He argues that such sums are not recoverable under §§ 13–16–122 and 13–33–103, C.R.S.2002, or under *Welch v. George,* 19 P.3d 675 (Colo.2000). However, plaintiff did not object to the cost award on this basis in the trial court and

therefore may not raise the issue for the first time on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc., supra.*

The judgment is affirmed.

Judge DAVIDSON and Judge DAILEY concur.