The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

**Jason HOGAN, Defendant–Appellant.**

**No. 02CA0396.**

Colorado Court of Appeals, Div. I.

Nov. 4, 2004.

Rehearing Denied Dec. 16, 2004.

Certiorari Denied June 27, 2005.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI § 5(3), and

§ 24–51–1105, C.R.S.2003.

45

Ken Salazar, Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

CASEBOLT, J.

Defendant, Jason Hogan, appeals the judgment of conviction entered upon jury verdicts finding him guilty of three counts of second degree kidnapping, one count of aggravated robbery, and two counts of crime of violence. Defendant also appeals the sentences imposed. We affirm.

Defendant accosted the victim with a gun in a parking lot and instructed her to drive to her bank and withdraw money. The victim, who was accompanied by her newborn baby and three-year-old niece, complied, while defendant sat in the front passenger seat.

After the victim withdrew the money and began to drive away from the bank, the victim's husband, who was fortuitously present in a separate vehicle, caught a glimpse of her and defendant, but he was unaware of the robbery. The victim dropped defendant off at an adjacent strip mall.

Several days after the incident, the victim identified defendant from a photo lineup. Her husband also identified him. The victim's mother, who had been shopping with the victim just before the incident, claimed to have seen defendant in another shopping mall and identified him at trial.

In addition, the police found a gun that they later showed to the victim. She initially identified it as the gun defendant had used. However, at trial she testified that it "looked like" the one defendant had used during the incident.

Following defendant's conviction, the trial court sentenced him to forty years in the custody of the Department of Corrections for the second degree kidnapping-robbery, twenty-five years for the aggravated robbery, and six years for each of the two counts of second degree kidnapping, to be served consecutively. This appeal followed.

I.

Defendant first contends the trial court erred in refusing to suppress identification testimony concerning a photographic array. Specifically, defendant asserts that the identification testimony is inadmissible because of impermissible suggestiveness in both the array and the manner in which it was conducted. We disagree.

The ultimate question as to the constitutionality of pretrial identification procedures is a mixed question of law and fact. Thus, we give deference to the trial court's findings of historical fact, but may give different weight to those facts and may reach a different conclusion. *Bernal v. People,* 44 P.3d 184 (Colo.2002).

In challenging the admissibility of out-of-court photographic identifications, the

defendant bears the burden of showing that the array was impermissibly suggestive. If the defendant meets that burden, the burden shifts to the prosecution to show that, despite the improper suggestiveness, the identification was reliable under the totality of the circumstances. *People v. Borghesi*, 66 P.3d 93 (Colo.2003); *Bernal v. People, supra*. If the trial court determines that the array was not impermissibly suggestive, the identification is admissible without further inquiry. *People v. Martinez*, 32 P.3d 520 (Colo.App. 2001).

■ Relevant factors in determining whether a pretrial photographic array is impermissibly suggestive include the size of the array, the details of the photographs, and the manner of presentation of the array. *Bernal v. People, supra*.

■ An array of six photographs that depicts individuals matched by race, approximate age, facial hair, and a number of other characteristics, and which does not include a photograph unique in some manner directly related to an important identification factor, generally comports with due process. In contrast, an array that includes photographs so limited that the defendant is the only one to match the witness's description of the perpetrator is impermissibly suggestive. *People v. Owens*, 97 P.3d 227 (Colo.App. 2004). Nevertheless, the police do not have to provide an array containing only exact replicas of the defendant's picture. *Bernal v. People, supra*.

■ Here, of the six men shown, five appear to be of the same race, all appear to be of the same approximate age, three have facial hair (including defendant), and five share many facial characteristics. There are no substantial differences in the shade and tone of defendant's photograph. Although defendant argues the array gives the impression that he is taller than the other individuals, two other photographs portray individuals in a similar alignment.

For these reasons, we agree with the trial court that the array was not impermissibly suggestive so as to give rise to a substantial likelihood of misidentification.

■ Regarding the presentation of the array, we reject defendant's assertion that it was impermissibly suggestive because the victim, her husband, and her mother knew that the police had arrested a suspect. The trial court found, with record support, that the detective present at the photo array did not tell the victim, her husband, or her mother that police had arrested a suspect. And the advisement form for the photo lineup told the victim that she should not assume that the guilty person had been caught and that she did not need to identify anyone.

Consequently, because neither the array nor the manner in which it was presented was impermissibly suggestive, we need not determine whether the prosecution proved that, despite any improper suggestiveness, the identification was reliable under the totality of the circumstances. *See People v. Martinez, supra*.

## II.

Defendant next contends the trial court erred in excluding expert testimony. Specifically, defendant asserts that the trial court violated his due process rights by excluding his expert's proffered testimony on the reliability of the victim's identification of him and that of a gun. We are not persuaded.

■ Trial courts possess broad discretion to allow or prohibit testimony by expert witnesses in criminal cases. *People v. Williams*, 790 P.2d 796 (Colo.1990). A trial court's decision to admit or reject expert testimony will not be overturned absent an abuse of discretion. *People v. Fasy*, 829 P.2d 1314 (Colo.1992).

To establish an abuse of discretion, it must appear that the court's choice of a particular course of action was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993).

■ Expert testimony is admissible if the scientific principles underlying the testimony are reasonably reliable, the expert is qualified to opine on such matters, and the expert testimony is useful to the jury. A trial court should also apply its discretionary authority under CRE 403 to ensure that the probative value of the evidence is not sub-

stantially outweighed by the danger of unfair prejudice. *People v. Shreck,* 22 P.3d 68 (Colo.2001).

## A.

 The trial court allowed the expert to testify concerning the effect of stress, weapon focus, and time estimation on a witness's identification. It excluded the proposed testimony as to one study the expert had conducted that involved showing the lineup in this case to forty-two students in a class she was teaching. The court found that the particular study lacked reliability.

Our review of the record reveals adequate support for the court's ruling. Defendant presented no evidence that the expert had conducted the study in conformance with any standard or procedure that would ensure it was reliable. Further, there was no evidence that the participants were a representative sampling of individuals such that the study would yield a reliable statistical analysis.

## B.

 Before trial, the police showed the victim a single gun, which the victim identified as the weapon used in the incident. We agree with the trial court that the jury could infer and weigh the suggestiveness of the identification procedure without the expert's opinion. Because the opinion would not have been helpful, the court acted within its discretion in excluding it. *See People v. Masters,* 33 P.3d 1191 (Colo.App.2001), *aff'd,* 58 P.3d 979 (Colo.2002).

## III.

Defendant contends the trial court erred in admitting evidence of the victim's out-of-court identification of the gun. We are not persuaded.

 Trial courts have considerable discretion in deciding questions concerning the admissibility of evidence, its relevancy, its probative value, and any prejudicial effect. Therefore, absent an abuse of discretion, a trial court's evidentiary rulings will not be disturbed. *People v. Ibarra, supra.*

 An item of relevant real evidence is admissible if it is connected with the perpetrator of a crime, the victim, or the crime. *People v. Penno,* 188 Colo. 307, 534 P.2d 795 (1975). When a witness observes and subsequently describes such an item of real evidence, testimony as to its description and out-of-court identification may be admitted. *See People v. Coston,* 40 Colo.App. 205, 576 P.2d 182 (1977), *aff'd,* 633 P.2d 470 (Colo. 1981).

 Contrary to defendant's contention, the identification of an inanimate object such as a gun is not as crucial an element of the proof as is a direct identification of a defendant as the person who committed a crime. Hence, the same constitutionally prescribed procedures used for identifying suspects do not apply to procedures used in identifying inanimate objects. *See Commonwealth v. Spann,* 383 Mass. 142, 418 N.E.2d 328 (1981).

 It follows, then, that any inadequacy in the procedures followed and the failure to use other procedures reasonably available are arguments that can be presented to the jury. *See Commonwealth v. Spann, supra.*

Here, the victim identified the gun in an out-of-court procedure, but at trial, she could only say that the proffered weapon "looked like" the gun used in the robbery. Defendant had ample opportunity to cross-examine the victim and the detective who testified concerning the procedure followed in her out-of-court identification. Defendant also called an expert who testified concerning the availability of the particular kind of gun, its similarity to another common weapon, and the large number of these weapons that had been manufactured.

 Under these circumstances, defects in the procedure for identifying the gun outside the courtroom go to the weight, not the admissibility, of the evidence. *See Commonwealth v. Spann, supra.* Hence, we find no abuse of discretion.

## IV.

Defendant next contends the trial court erred in ruling that he had not met his burden of showing a prima facie case, under

*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), of improper racial discrimination by the prosecutor in making a peremptory challenge. We disagree.

*Batson* outlines a three-step process for evaluating claims of racial discrimination in jury selection. First, the challenging party must make a prima facie showing that the other party excluded a potential juror because of race. Second, if the challenging party establishes a prima facie case, the burden shifts to the proponent of the challenged strike to come forward with a race-neutral explanation for it. Third, if the proponent tenders a race-neutral explanation, the trial court must determine whether the challenging party has proved purposeful racial discrimination. *Valdez v. People*, 966 P.2d 587 (Colo.1998); *Donelson v. Fritz*, 70 P.3d 539 (Colo.App.2002).

To establish a prima facie showing, the defendant (1) must demonstrate that the prosecution struck from the jury a member of a cognizable racial group; (2) can rely on the fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate'"; and (3) must show that the totality of the relevant facts gives rise to an inference of purposeful discrimination. *Batson v. Kentucky, supra*, 476 U.S. at 96–98, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)). The trial court must consider all relevant circumstances in determining whether a prima facie case has been made. *Valdez v. People, supra.*

Relevant factors in determining whether an inference of intentional racial discrimination exists include the disproportionate effect of peremptory strikes, a pattern of strikes against jurors of a particular race, and the prosecutor's questions and statements during voir dire. *Batson v. Kentucky, supra; United States v. Esparsen*, 930 F.2d 1461 (10th Cir.1991). However, a systematic pattern of exclusions is neither necessary nor sufficient for making a prima facie showing. *See People v. Hughes*, 946 P.2d 509 (Colo.App.1997), *overruled in part by Valdez v. People, supra.* There is "no magic

number of challenged jurors which shifts the burden to the government to provide a neutral explanation for its actions." *Turner v. Marshall*, 63 F.3d 807, 812 (9th Cir.1995)(quoting *United States v. Chinchilla*, 874 F.2d 695, 698 (9th Cir.1989)), *overruled in part by Tolbert v. Page*, 182 F.3d 677 (9th Cir.1999).

A peremptory challenge used to strike the only venire member of a cognizable racial group may be sufficient for a prima facie showing of racial discrimination. *People v. Baker*, 924 P.2d 1186 (Colo.App.1996); *see also Splunge v. Clark*, 960 F.2d 705 (7th Cir.1992)(a prosecutor may not exercise even a single peremptory challenge if through that challenge he or she intentionally discriminates on the basis of race); *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987)(prima facie case of discrimination made when prosecutor struck only remaining venire member of defendant's race). However, merely that a member of a racial group has been peremptorily excluded from the jury does not necessarily establish a prima facie showing of discrimination; step one of the *Batson* process also requires that the circumstances of the case raise an inference that the strike was based on race. *State v. White*, 684 N.W.2d 500 (Minn.2004); *see also United States v. Chalan, supra* (striking a single juror of a cognizable racial group will not always constitute a prima facie case).

We review de novo the trial court's legal conclusions on steps one and two of the *Batson* analysis, deferring to any underlying factual findings, including any predicate credibility determinations. However, we give deference to the trial court's ruling in step three, reversing only for clear error. *Valdez v. People, supra; Donelson v. Fritz, supra.*

Here, the following circumstances arguably support an inference of discrimination: the excluded venire member was African–American and, thus was a member of a cognizable group; he was the first person to be challenged by the prosecution; the prosecution's questions to this juror during voir dire were desultory and unrevealing; and no reason for the strike appears from the record. However, other than the first two facts not-

ed, defense counsel offered no facts, circumstances, or argument to the court supporting a discriminatory inference.

The record reveals that at least one other member of the panel was African–American, but he was dismissed for cause by the court with the concurrence of the parties. Therefore, his presence on the panel adds nothing to the analysis. No information is available concerning the racial makeup of the remainder of the jury panel, except that the surnames of several panel members suggest Hispanic origin.

The following circumstances negate an inference of discrimination: the record does not reveal whether other African–American persons were on the panel after the challenge for cause or ultimately served on the jury; defendant is Caucasian and the case presents no racial issue; and no discussion of race occurred during voir dire.

The trial court made no specific factual findings, stating in response to defendant's objection, "At this point in—I'm not able to find any—even a prior fair showing of any racial basis for excusing the juror."

 Conducting de novo review on this sparse record is difficult at best. We lack information that counsel and the trial court had, but that was not placed on the record, most important the racial composition of the entire panel before and following the challenge, and the ultimate racial makeup of the jury. We further recognize that defendant bears the burden of persuasion on this first step and, thus should bear the consequences of failing to place supporting information on the record.

Moreover, it is not entirely clear that defendant's objection was to this particular strike. Instead, he may have been laying the groundwork for a later objection, assuming the prosecution continued to strike members of cognizable racial groups. Defense counsel stated:

> I don't know at this point in time there is a valid *Batson* challenge but I don't really see any reason why they're kicking this guy off. He didn't make any other statements. He's black. He's a minority and I don't know if we are going to get into a

pattern of kicking off minorities but I want to note my objection to the first person out of the box that he is a minority.

Even if we assume defendant in fact objected to this strike, we conclude that the meager record presented here by defendant fails to demonstrate a prima facie case of racial discrimination. The relevant facts in this record are simply insufficient to show an inference of purposeful discrimination of the kind that *Batson* was crafted to deter. *See State v. White, supra* (mere fact that excluded juror was African–American did not suffice to demonstrate prima facie case); *see also United States v. Stavroulakis,* 952 F.2d 686 (2d Cir.1992)(reference merely to the race of one excused venireperson, without more, is insufficient to raise an inference of discrimination); *United States v. Esparsen, supra* (defendant has burden of creating record of relevant facts; court could not determine from the record that no members of the specific racial group remained on the final jury, and hence defendant's *Batson* challenge rejected).

We therefore reject defendant's assertions. In view of this disposition, we need not discuss the remaining prongs of the *Batson* analysis. *See People v. Burke,* 937 P.2d 886 (Colo.App.1996)(if the party alleging discrimination does not establish a prima facie case, the court need not proceed any further with the *Batson* analysis).

## V.

Defendant next contends the court erred in declining to allow discovery of the victim's mental therapy records. Specifically, he asserts that the victim waived any privilege and that, in any event, the privilege must give way to his right of confrontation. Defendant also contends the trial court erred by failing to conduct an in camera review of the therapy records. We disagree.

## A.

 We are not persuaded by defendant's contention that the victim waived her psychologist-patient privilege by putting her mental condition in issue.

Section 13–90–107(1)(g), C.R.S.2004, establishes the psychologist-client privilege. It provides generally that a licensed psychologist may not be examined without the consent of the client as to any communication made by the client to the psychologist or the psychologist's advice to the client.

■ The psychologist-client privilege shields more than just communications between the psychologist and the client. Once it attaches, the privilege protects testimonial disclosures as well as pretrial discovery of files or records derived or created in the course of the treatment. *See Dill v. People*, 927 P.2d 1315 (Colo.1996) (notes and reports from ongoing counseling sessions properly excluded under the privilege).

■ Once the privilege has attached, the defendant may not compel discovery unless it is waived. *Clark v. District Court*, 668 P.2d 3 (Colo.1983); *People v. Tauer*, 847 P.2d 259, 261 (Colo.App.1993)("Once the privilege applies, the only basis for allowing any disclosure of information is waiver by the person holding the privilege.").

■ Moreover, a showing of waiver is required before the trial court may order the documents produced for an in camera review. *See People v. District Court*, 719 P.2d 722 (Colo.1986).

■ A waiver may be implied if the privilege holder places his or her physical or mental condition in issue. The party seeking to overcome the claim of privilege has the burden of establishing a waiver. *People v. District Court, supra; Clark v. District Court, supra.*

Here, approximately a month and a half after the incident, the victim filled out a victim impact form in which she stated that she had been traumatized by the robbery, had trouble sleeping, and had gone back to counseling. She indicated that her two-year-old daughter had died two years earlier and the robbery brought back the trauma.

The victim did not include the nature and extent of her treatment in the victim impact statement. It revealed only that she had experienced distress and that she had gone back to therapy. These statements did not place the substance of her mental therapy or her post-incident mental condition in issue. *See People v. Silva*, 782 P.2d 846 (Colo.App. 1989) (victim's testimony that she had suffered nightmares and anxiety as a result of the assault and that she was undergoing counseling did not amount to a waiver, as her testimony did not concern the substance of the communications with her therapist).

Hence, we conclude that the victim did not waive her privilege. For the same reason, we conclude the trial court did not err when it declined to conduct an in camera review of the records. *See People v. Sisneros*, 55 P.3d 797 (Colo.2002); *People v. Silva, supra.*

B.

■ We reject defendant's contention that access to the privileged communication was necessary for the effective exercise of his right of confrontation.

Defendant argues that access to the therapy records was necessary to determine whether the victim was confusing him with the perpetrator of the earlier incident in which the victim's daughter had died, and whether such trauma would affect the victim's memory. However, the record reflects that the incident in which the victim's daughter died was a home accident. Further, defendant had an adequate opportunity to cross-examine the victim as to her ability to remember.

VI.

■ Defendant contends the trial court violated his right of confrontation by erroneously precluding, pursuant to CRE 403, cross-examination of the victim regarding prior inconsistent statements she allegedly made on her victim impact statement. We are not persuaded.

■ The Sixth Amendment guarantees the right of the accused in a criminal case to confront adverse witnesses. Hence, the right to cross-examination is of constitutional significance. *See Vega v. People*, 893 P.2d 107 (Colo.1995). A trial court has the authority to impose some limits on cross-examination, but where such limits prevent a

defendant from using cross-examination to explore the bias or prejudice of a witness against him, the requirements of the Sixth Amendment are not met. *See Merritt v. People,* 842 P.2d 162 (Colo.1992).

■ However, a defendant's right to cross-examination is not absolute. A trial court has authority to prohibit cross-examination on matters that are irrelevant, repetitive, or only marginally relevant to the issues at trial. *People v. District Court, supra; People v. Gholston,* 26 P.3d 1 (Colo.App. 2000).

■ Determinations under CRE 403 are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *People v. Gholston, supra.*

Defendant contends the victim testified on cross-examination that she had suffered no long-term emotional effects as a result of the incident, contradicting her previous declaration in the victim impact statement. However, the record does not support this contention. In fact, the victim agreed during cross-examination that she had suffered long-term effects as a result of the incident. In addition, the trial court found that the victim had extensively testified regarding the degree of trauma she had experienced because of the incident and that any further questioning was cumulative pursuant to CRE 403.

Accordingly, the court did not err in precluding the proffered evidence.

## VII.

Defendant next asserts that he was deprived of a fair trial because of numerous instances of prosecutorial misconduct during cross-examination and closing arguments. We are not persuaded.

■ In determining whether prosecutorial misconduct mandates a new trial, an appellate court must evaluate the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendant's conviction. *People v. Merchant,* 983 P.2d 108 (Colo.App.1999).

■ A reviewing court should examine the alleged improprieties in the context of the arguments as a whole and in light of the evidence presented. *People v. Gutierrez,* 622 P.2d 547 (Colo.1981).

### A.

Defendant argues that, during cross-examination of one of his expert witnesses, the prosecutor asserted that the state does not charge people who are not guilty. *See People v. Jones,* 832 P.2d 1036 (Colo.App.1991)(improper for prosecutor to assert that no charges are filed if the district attorney's office, after investigation "has any reasonable doubt"). However, the court sustained defendant's objection, and the prosecutor immediately switched to a different line of inquiry.

Defendant argues that the prosecutor improperly asserted that two FBI agents had disputed part of the expert's testimony knowing that such evidence had not been introduced. Again, however, the court sustained defendant's objection.

The third instance occurred during cross-examination of defendant's firearm identification expert. Defendant argues that the prosecutor attempted to impeach the expert by questioning a district attorney investigator who was not on the stand. The court sustained defendant's objection, instructed the jury to disregard such questioning, and directed the prosecutor to question the witness on the stand.

The next instance of asserted prosecutorial misconduct took place during closing arguments, in which the prosecution stated that only twelve percent of the population was left-handed and that defendant was left-handed. Again, the trial court sustained defendant's objection.

■ Evaluating the severity and frequency of the asserted misconduct, the curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to defendant's conviction, we do not perceive that the jury was substantially prejudiced by improper conduct. The remarks were corrected when the court sus-

tained the objections, admonished the prosecutor, and appropriately instructed the jury. Absent a contrary showing, it is presumed that the jury understood and heeded the court's instructions. *People v. Valdez*, 725 P.2d 29 (Colo.App.1986). While certain comments and conduct of the prosecutor were questionable and occasionally improper, considered either in isolation or cumulatively, such instances were not so prejudicial or pervasive as to deprive defendant of a fair trial. Hence, reversal of the convictions is unwarranted on this record. *See People v. Rubanowitz*, 688 P.2d 231 (Colo.1984).

### B.

■ Because defendant did not object to the remaining four instances of asserted prosecutorial misconduct occurring during closing arguments, we review them under a plain error standard. Under this standard, we will reverse only if, after review of the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Wilson*, 838 P.2d 284 (Colo.1992); *People v. Avila*, 944 P.2d 673 (Colo.App.1997).

■ The first alleged impropriety occurred when the prosecutor stated that although there was not any fingerprint evidence, the jury did not need evidence of fingerprints to make a decision. Defendant argues that the prosecutor mischaracterized the evidence and the inferences that could be drawn. We disagree. This comment, considered in context, simply anticipated the defense's closing argument, acknowledged that no fingerprint evidence had been introduced in the case, and asserted that none was necessary.

■ The second alleged impropriety occurred when the prosecutor stated, "[Defense counsel] is trying to put to you an argument that is very convoluted. It's very tactical. He's picking and he's picking and it's the same kind of tactics that the defendant used when he went out that day and he chose [the] . . . victim."

We agree that this remark was improper. *See People v. Jones, supra* (statements by the prosecutor that denigrate defense counsel are improper and constitute professional misconduct). However, reading the closing arguments as a whole, we are confident that its inclusion did not affect the result in this case.

■ The third instance involves the prosecutor's remark that defense counsel was "trying to sell the theory" that defendant was "the unluckiest man in the world," because so many of certain cited instances linked him to the crime. However, our review of the record shows that this constituted a fair comment upon defendant's theory of defense and explanation for the evidence. *See People v. Vialpando*, 804 P.2d 219 (Colo.App.1990)(the prosecution is afforded wide latitude in replying to arguments by defense counsel).

The final alleged impropriety involves the definition of reasonable doubt. The prosecutor essentially argued that a doubt that cannot be articulated cannot be a reasonable doubt.

■ It is error for a court to instruct the jury that a reasonable doubt is only a doubt for which one can give a reason. *See People v. Sherman*, 45 P.3d 774 (Colo.App. 2001). Here, however, the court correctly instructed the jury concerning the definition of reasonable doubt at the beginning of trial as well as at its end. The court also instructed the jury that closing arguments do not constitute evidence and that the law was contained in the court's instructions. Further, the fact that defendant did not object to the prosecutor's assertion may have demonstrated his belief that the live argument was not overly damaging. *See People v. Rodriguez*, 794 P.2d 965 (Colo.1990).

In light of the trial court's instructions, we cannot say with fair assurance that the prosecutor's remarks regarding the interpretation of reasonable doubt so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. Hence, we find no plain error.

## VIII.

Defendant next contends the trial court erred by failing to merge the aggravated robbery conviction into the kidnapping conviction, thus violating double jeopardy principles. We do not agree.

We review questions of law under a de novo standard. *Robles v. People*, 811 P.2d 804 (Colo.1991).

■ An identical analysis is employed to determine whether an offense is the same or lesser included for purposes of both merger and double jeopardy. An offense is lesser included for purposes of merging into a greater offense when the proof of the essential elements of the greater offense necessarily establishes all the elements required to prove the lesser offense. *People v. Henderson*, 810 P.2d 1058 (Colo.1991).

■ A sentence enhancement factor is not a substantive element of the charged offense. A statutory provision is a sentence enhancer if its proof, while raising the felony level of the offense, is not required to secure a conviction. *People v. Leske*, 957 P.2d 1030 (Colo.1998); *People v. Gholston, supra.*

■ Under § 18–3–302(3)(b), C.R.S. 2004, if the person kidnapped is the victim of a robbery, the penalty level is enhanced from a class three to a class two felony. *People v. Fuller*, 791 P.2d 702 (Colo.1990). The penalty enhancement factor of robbery is not a lesser included offense that merges into second degree kidnapping involving robbery. *People v. Huggins*, 825 P.2d 1024 (Colo.App. 1991).

■ Defendant asserts that, in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), there is no rational basis for treating sentence enhancers as the functional equivalent of elements for purposes of the Due Process Clause, but not for purposes of the Double Jeopardy Clause. However, as defendant recognizes, a division of this court in *People v. Martinez, supra*, 32 P.3d at 530, concluded that "it is uncertain whether *Apprendi* compels the conclusion that any such fact that may increase the maximum penalty *ipso facto* becomes an essential element of that of-

fense." Accordingly, the *Martinez* division concluded that *People v. Henderson, supra*, remained dispositive of the merger issue, and held that second degree kidnapping, when enhanced by a factor of sexual assault, does not require that a separate conviction for the sexual assault be merged into a kidnapping conviction. We agree with the rationale of *Martinez* and adopt it here.

Defendant nevertheless asserts that *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), mandates a different result. We disagree.

In *Ring*, the Supreme Court overturned Arizona's death penalty statute, which had allowed a judge to find aggravating factors warranting the death penalty, because Arizona's enumerated aggravating factors operated as the functional equivalent of an element of a greater offense. The Court held the Sixth Amendment requires such factors to be found by a jury beyond a reasonable doubt.

The Court did not, however, hold as a matter of law that a sentence enhancer constitutes an element of the offense for Fifth Amendment double jeopardy purposes. It only held that a sentence enhancer is the functional equivalent of an element of a greater offense for purposes of determining whether the enhancer must be proved to a jury beyond a reasonable doubt. In other words, the issue there was whether, and under what standard of proof, in the context of the Sixth Amendment's jury trial guarantee, a judge or jury decides the presence or absence of a sentence enhancing factor, not whether a sentence enhancing factor constitutes an element for purposes of double jeopardy.

We also reject defendant's reliance upon *Sattazahn v. Pennsylvania*, 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003), for a different conclusion. In *Sattazahn*, the Supreme Court held that when a defendant, who is convicted of murder and sentenced to life imprisonment, succeeds in having the conviction set aside on appeal, there is no double jeopardy or due process bar that prevents the state from seeking the death penalty on retrial. In part III of the opinion,

Justice Scalia, writing for a three-person plurality, reviewed the holdings of *Apprendi* and *Ring* and stated that:

> In *Ring* ... we held that aggravating circumstances that make a defendant eligible for the death penalty "operate as 'the functional equivalent of an element of a *greater offense.*' " That is to say, for purposes of the Sixth Amendment's jury-trial guarantee, the underlying offense of "murder" is a distinct, lesser included offense of "murder plus one or more aggravating circumstances": Whereas the former exposes a defendant to a maximum penalty of life imprisonment, the latter increases the maximum permissible sentence to death. Accordingly, we held that the Sixth Amendment requires that a jury, and not a judge, find the existence of any aggravating circumstances, and that they be found, not by a mere preponderance of the evidence, but beyond a reasonable doubt. We can think of no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an "offence" for purposes of the Fifth Amendment's Double Jeopardy Clause.

*Sattazahn, supra,* 537 U.S. at 111, 123 S.Ct. at 739 (citations omitted).

However, because this portion of the *Sattazahn* decision garnered the support of only three justices, it is not controlling. *See United States v. Johnson,* 270 F.Supp.2d 1060 (N.D.Iowa 2003). Accordingly, we do not construe the last quoted sentence as a constitutional mandate that any fact increasing the maximum penalty becomes an essential element of the offense for both double jeopardy and merger purposes.

Therefore, we conclude that the trial court did not err in declining to merge the aggravated robbery conviction into the kidnapping conviction.

IX.

Defendant next contends the trial court erred in imposing consecutive rather than concurrent sentences. We disagree.

When a defendant is convicted of multiple offenses, the sentencing court has discretion to impose consecutive or concurrent sentences. However, § 18–1–408(3), C.R.S.2004, mandates imposition of concurrent sentences for offenses committed against a single victim when the counts are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical. *Qureshi v. District Court,* 727 P.2d 45 (Colo.1986); *People v. Jurado,* 30 P.3d 769 (Colo.App.2001). Where multiple victims are involved, the court may, within its discretion, impose consecutive sentences. Section 18–1–408(3).

Here, because each kidnapping count involved three separate victims, the court acted within its discretion in imposing consecutive sentences as to the kidnapping convictions.

Regarding the second degree kidnapping and aggravated robbery of the adult victim, although both counts were based on the same series of acts, the convictions for each were not based on identical evidence.

Second degree kidnapping requires proof that the defendant knowingly seized and carried the victim from one place to another, without her consent or lawful justification. Here, that proof came from the victim's testimony that defendant, at gunpoint, forced her to drive to her bank and withdraw money.

Aggravated robbery, as charged here, requires proof that the defendant robbed the victim, and by the use of force, threats, or intimidation with a deadly weapon knowingly put the person robbed in reasonable fear of death or bodily injury. This charge was established by the victim's testimony that defendant stated he would not hurt anybody as long as she did what he said, by evidence of the gun that defendant used during the offenses, and by the victim's reasonable fear of bodily injury.

Hence, because the two crimes require proof of different elements, and in fact were supported by different evidence, the trial court did not abuse its discretion in imposing consecutive sentences.

Moreover, a defendant convicted of two or more separate crimes of violence arising out of the same incident, as here, must be sentenced for such crimes so that sentences are served consecutively rather than concurrently. Section 18–1.3–406(1)(a), C.R.S.2004.

## X.

Defendant contends the trial court erred in imposing aggravated sentences. We disagree.

Second degree kidnapping-robbery is a class two felony with a presumptive range sentence of eight to twenty-four years. *See* § 18–1.3–401(1)(a)(V)(A), C.R.S.2004.

Aggravated robbery is a class three felony with a presumptive range sentence of four to twelve years. *See* § 18–1.3–401(1)(a)(V)(A).

However, the prosecutor pleaded, and the jury found, that defendant had committed a crime of violence as to the kidnapping-robbery. Moreover, aggravated robbery is a per se crime of violence, which is subject to crime of violence sentencing. *See* § 18–1.3–406, C.R.S.2004; *People v. Terry*, 791 P.2d 374 (Colo.1990); *People v. Hoang*, 13 P.3d 819 (Colo.App.2000).

Under § 18–1.3–406, a person convicted of a crime of violence shall be sentenced to a term of incarceration of at least the midpoint in the presumptive range for that offense, but not more than twice the maximum term. Accordingly, the second degree kidnapping-robbery conviction requires a sentence in the range of sixteen to forty-eight years of imprisonment pursuant to § 18–1.3–406(1)(a). Likewise, the aggravated robbery conviction requires a sentence in the range of eight to twenty-four years of imprisonment pursuant to § 18–1.3–406(1)(a).

Further, when the accused is charged with and convicted of a crime of violence and the indictment or information specifies the use of a dangerous weapon, the court must impose an additional sentence to the department of corrections of five years for the use of such weapon, to be served consecutively, in addition to the mandatory sentence imposed for the substantive offense. *See* § 18–1.3–406(7)(a), C.R.S.2004.

Here, defendant was subject to crime of violence sentencing pursuant to his second degree kidnapping-robbery and aggravated robbery convictions, and the information charged a crime of violence by the use of a dangerous weapon. Hence, his forty- and twenty-five-year sentences were within the required statutory range. *See* § 18–1.3–406(1)(a).

Defendant nevertheless argues that *Apprendi v. New Jersey, supra,* and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), mandate a different result because the court, in imposing the aggravated sentences, relied on facts not found by the jury beyond a reasonable doubt. We reject defendant's argument.

Under *Apprendi* and *Blakely,* the statutory maximum authorized by a jury verdict is the maximum in the presumptive range for the class of felony, unless the defendant admits certain facts or other statutes are applicable that automatically increase the range of sentence for particular crimes. *People v. Solis–Martinez,* —— P.3d ——, 2004 WL 2002525 (Colo.App. No. 03CA1365, Sept. 9, 2004).

Here, because defendant was subject to crime of violence sentencing that automatically increases the range of sentence for the enumerated crimes, enhancement of his sentences pursuant to § 18–1.3–406 did not require proof of any fact other than the elements of kidnapping-robbery and aggravated robbery, which were necessarily proved beyond a reasonable doubt, as is apparent from the jury's verdict here.

Accordingly, the sentences are within the range prescribed by law and are not defective under *Apprendi* and *Blakely.* For similar reasons, we conclude that the court did not "aggravate" defendant's sentences, and therefore we find no abuse of discretion in its imposition of the term of years here.

The judgment and sentences are affirmed.

Judge MARQUEZ and Judge ROY concur.